UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o UNITED STATES DEPARTMENT<br>OF JUSTICE, 1400 NEW YORK AVENUE,<br>N.W., 10TH FLOOR, WASHINGTON,<br>D.C. 20005<br><br>      Plaintiff,<br><br>      v.<br><br>THREE SUMS TOTALING $1,207,035.31<br>IN SEIZED UNITED STATES CURRENCY<br><br>      Defendants *in rem.* | Case No. 16-cv- |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by and through its undersigned attorneys, brings this verified complaint in a civil action *in rem* to condemn and forfeit the above-listed defendant property to the use and benefit of the United States of America in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. In support of its cause, Plaintiff states and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil forfeiture action against United States currency traceable to violations of the International Emergency Economic Powers Act of 1977 ("IEEPA"), 50 U.S.C. §§ 1701-1706, and involved in violations of the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956. These funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3. Venue for this action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANTS *IN REM*

4. The defendants *in rem* consist of the following:

   a. $629,311.19 in United States currency, plus interest, formerly on deposit within account number 122559 located at Deutsche Bank, seized on or about November 27, 2015;

   b. $116,939.12 in United States currency, plus interest, formerly on deposit within account numbers 048-468-401, 048-549-525, and 610-551-094 located at HSBC Bank USA, N.A. ("HSBC"), seized on or about November 25, 2015; and

   c. $460,785.00 in United States currency, plus interest, formerly on deposit within account number 8539237860 located at Wells Fargo, N.A. ("Wells Fargo"), seized on or about June 17, 2015.

5. Pursuant to seizure warrants issued by this Court, these defendants were seized and transferred to the possession and custody of the United States Marshals Service, where they currently remain, and will remain for the pendency of this action. In light of these seizures, the United States requests the issuance of an arrest warrant *in rem* signed by the Clerk of Court. *See* Supplemental Rule G(3)(b)(i).

6. On or about June 18, 2015, administrative forfeiture proceedings were commenced against the approximate $460,785.00 seized from Wells Fargo.

7. On or about October 19, 2015, Kassim Tajideen filed a timely claim in the administrative forfeiture proceedings for the approximate $460,785.00, asserting an interest in the funds seized from the Wells Fargo account by virtue of his ownership of International Cross Trade Company Limited ("ICTC"), the company that had wired the seized funds into the Wells Fargo account.

## BACKGROUND ON IEEPA SANCTIONS

8. The United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia, administers and enforces economic and trade sanctions against certain foreign countries, entities, and individuals in accordance with IEEPA and associated regulations and orders, including Executive Order 13224 and the Global Terrorism Sanctions Regulations, Title 31, Code of Federal Regulations, Part 594 ("GTSR").

9. The penalties section of IEEPA, 50 U.S.C. § 1705, makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition" issued under IEEPA.

10. Following the terrorist attacks of September 11, 2001, President George W. Bush issued Executive Order 13224 pursuant to IEEPA and other statutes, declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by grave acts of terrorism and threats of terrorism committed by foreign terrorists. *See* 66 Fed. Reg. 49079 (Sept. 23, 2001).

11. To implement Executive Order 13224, OFAC issued the GTSR, which immediately blocked all property and interests in property of certain designated persons or entities, known as Specially Designated Global Terrorists ("SDGTs"). 31 C.F.R. Part 594.

12. The GTSR also prohibited all U.S. persons and entities from engaging without a license in any transaction or dealing in property or interests in property of SDGTs. Id. The GTSR broadly defined the interests of an SDGT to mean an interest of any nature whatsoever, direct or indirect. Id. As a result, it is a violation of IEEPA, Executive Order 13224, and the GTSR for any unlicensed U.S. person or entity to engage in any transaction not only with an SDGT, but also with any undesignated third-party entity or person acting on behalf of the designated SDGT. Id.

### SPECIFIC PERSONS AND ENTITIES DESIGNATED AS SDGTS

13. On May 27, 2009, OFAC designated Kassim Tajideen ("Tajideen") as an SDGT pursuant to Executive Order 13224 and based on his significant financial support of the Hizbollah terrorist organization. On December 9, 2010, OFAC designated his brother, Husayn Tajideen, as an SDGT for the same reasons. Hizbollah had previously been designated as an SDGT by OFAC on October 31, 2001. At all times since their respective designation dates until today, Tajideen, Husayn Tajideen, and Hizbollah have remained SDGTs.

14. Also on December 9, 2010, OFAC designated, among others, the following four companies as SDGTs: (1) TAJCO; (2) Congo Futur; (3) Grupo Arosfran Empreendimentos E Participacoes SARL ("Arosfran"); and (4) Ovlas Trading SA, pursuant to Executive Order 13224. The companies were designated after being identified as owned or controlled by one or both of the Tajideen brothers. At all times since their designation date until today, all of these entities have remained SDGTs.

15. At all times relevant to this complaint, TAJCO was a multinational company owned by and for the benefit of Tajideen, Husayn Tajideen, and others. TAJCO was composed of several subsidiary and sibling entities, including Tajco Company Limited in Banjul, Gambia. Husayn Tajideen managed the daily operations of the company in Gambia. Other family members and employees operated the company on behalf of Tajideen in Lebanon, Sierra Leone, and elsewhere.

16. At all times relevant to this complaint, Congo Futur was an importer and distributer of goods based in Kinshasa, Democratic Republic of Congo ("DRC"), and operated by Tajideen, as well as family members and company employees operating on Tajideen's behalf in Kinshasa and Beirut, Lebanon. Congo Futur was owned by and for the ultimate benefit of Tajideen and others. Congo Futur was a subsidiary of Ovlas Trading SA.

17. At all times relevant to this complaint, Arosfran was an importer and distributer of goods based in Luanda, Angola, and was operated by Tajideen, as well as family members and company employees operating on Tajideen's behalf, in Luanda and Beirut. Arosfran was owned by and for the ultimate benefit of Tajideen and others. Arosfran was a sister company to Afri Belg Commercio E Industria LDA, as well as Golfrate Holdings LDA.

18. Immediately after the designation of TAJCO as an SDGT in 2010, Husayn Tajideen changed the name of the company in Gambia from Tajco Company Limited to Grand Stores Limited.

19. On April 19, 2012, OFAC amended its SDGT designation of TAJCO to include Grand Stores as an alias of TAJCO in Gambia.

## UNDESIGNATED PERSONS AND ENTITIES ACTING
## ON BEHALF OF AND/OR OWNED BY SDGTS

20. Soon after the designation of Grand Stores as an SDGT in 2012, Husayn Tajideen reorganized the company in Gambia and shifted business from Grand Stores to entities Sub Zero Food Company ("Sub Zero"), Shanser General Merchandise ("Shanser"), and OSS Food Stuff Import & Export Limited ("OSS"). TAJCO, Grand Stores, Shanser, Sub Zero, and OSS were owned by and for the benefit of Tajideen, Husayn Tajideen, and others.

21. At all times relevant to this Complaint, ICTC was a holding company incorporated in the United Arab Emirates and operated by Tajideen and others working on his behalf in Lebanon. ICTC maintained bank accounts in the United Arab Emirates in financial institutions known as Emirates NBD Bank PJSC, Sharjah Islamic Bank, and Mashreq Bank. ICTC was owned by and for the ultimate benefit of Tajideen and others.

22. At all times relevant to this Complaint, Sicam Ltd was an importation and distribution company located in Luanda, Angola, that was formerly known as FozKudia Industrial LDA ("FozKudia"). Sicam Ltd was owned by and for the ultimate benefit of Tajideen and others.

## THE INVOLVEMENT OF DEFENDANT FUNDS IN
## PROHIBITED FINANCIAL TRANSACTIONS

23. Two types of financial transactions prohibited by IEEPA, Executive Order 13224, and the GTSR include: (1) transactions by an SDGT (or an undesignated person or entity acting on their behalf) with a U.S. person or company without an OFAC license; and (2) transactions by an SDGT (or an undesignated person or entity acting on their behalf) with a non-U.S. person or company in U.S. dollars that are cleared through correspondent accounts at a U.S.-based financial institution without an OFAC license. See Id.

24. Correspondent banking, also known as interbank services, is a line of business at many large financial institutions whereby foreign banks are able to support international wire transfers for their customers in a currency that they normally do not hold on reserve. Correspondent banks in the U.S. facilitate these wire transfers by allowing these other banks, located exclusively overseas, to maintain accounts at the correspondent bank in the United States.

25. Correspondent banking in the United States is not exempt from the Bank Secrecy Act, IEEPA, or the Money Laundering Control Act.

26. Deutsche Bank and HSBC provide correspondent banking in the United States in support of U.S. dollar transactions.

27. The defendant funds seized from Wells Fargo, and approximately $18,424.00 of the defendant funds seized from Deutsche Bank, were involved directly in transactions with a U.S. person or company. The remaining defendant funds seized from Deutsche Bank and HSBC were involved in interbank transfers that were intercepted transiting through correspondent bank accounts in the United States.

Defendant Funds Seized from Wells Fargo

28. Wells Fargo is headquartered in Sioux Falls, South Dakota, and San Francisco, California.

29. Bankers Branch and Trust Company ("BB&T") is headquartered in Winston-Salem, North Carolina.

30. An American company, referred to here as "Company A," is a privately-held food exporter that primarily sells frozen meat products to distributors in China, Africa, and the Middle East. Company A maintained bank accounts at BB&T and at Wells Fargo.

31. Wells Fargo, BB&T, and Company A did not possess licenses from OFAC to conduct transactions with or for the benefit of Tajideen during the period beginning December 1, 2013 until the present.

32. During the approximate period of December 1, 2013 through June 1, 2015, Company A conducted a series of at least six sales transactions with ICTC, Sicam Ltd, and Tajideen, all affecting interstate and foreign commerce. As part of the transactions, Company A shipped over three million kilograms of goods from the United States to Angola consigned to Sicam Ltd, a company owned and controlled by Tajideen. As payments for the goods, a portion of the defendant funds, totaling approximately $460,800.00, was wire transferred from banks in the United Arab Emirates on behalf of ICTC, a company owned and controlled by Tajideen, into accounts located in the United States at BB&T, all in violation of IEEPA, Executive Order 13224, the GTSR, and the Money Laundering Control Act. Company A subsequently transferred these funds into an account held at Wells Fargo, from which the defendant funds were seized.

Funds Seized from Deutsche Bank

33. Deutsche Bank is located at 60 Wall Street in New York, New York and provides correspondent banking services in U.S. dollars.

34. Deutsche Bank did not possess a license from OFAC to conduct transactions with or for the benefit of Tajideen, Arosfran, or Congo Futur during the period September 1, 2009, through December 1, 2010.

35. Between September 1, 2009, through December 1, 2010, defendant funds totaling approximately $632,859.20 were wire transferred into U.S.-dollar accounts located in the United States at Deutsche Bank, either by or for the benefit of an SDGT, all in violation of IEEPA,

Executive Order 13224, the GTSR, and the Money Laundering Control Act. These funds include:

a. on or about September 25, 2009, a wire transfer in the amount of $62,328.00 from an account held in the name of Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco Africano de Investimentos in Luanda, Angola, intended for an account held by Arcor SAIC at Deutsche Bank in Frankfurt, Germany;

b. on or about September 25, 2009, a wire transfer in the amount of $40,590.00, from an account held in the name of Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco Africano de Investimentos in Luanda, Angola, intended for an account held by Arcor SAIC at Deutsche Bank in Frankurt, Germany;

c. on or about September 30, 2009, a wire transfer in the amount of $18,424.20 from an account in the name of OIC Services, Inc., held at Sterling Bank in Houston, Texas, intended for an account held in the name of Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco de Fomento SARL in Luanda, Angola.

d. on or about October 5, 2009, a wire transfer in the amount of $489,665.00 from an account held in the name of Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco Africano de Investimentos in Luanda, Angola, intended for an account held by Arcor SAIC at Deutsche Bank in Frankurt, Germany;

e. on or about November 17, 2009, a wire transfer in the amount of $100.00 from an account held in the name of Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco de Fomento SARL in Luanda, Angola, intended for an account at Banco Santander in Sao Paulo, Brazil.

 f. on or about June 10, 2010, a wire transfer in the amount of $8,850.00 from an account held by Arosfran, a company owned, controlled, and for the benefit of Tajideen, at Banco de Fomento SARL in Luanda, Angola, intended for payment to an account in the name of Bokomo Foods Pty Ltd held at ABSA Bank Ltd. in Johannesburg, South Africa.

 g. on or about November 3, 2010, a wire transfer in the amount of $12,900.00 from an account held in the name of AUFS at Standard Bank RDC SARL in Kinshasa, DRC, intended for an account in the name of Congo Futur, a company owned, controlled, and for the benefit of Tajideen, at Banque Internationale Pour L'Afrique in Kinshasa, DRC.

36. During each of these seven transactions, all of which affected interstate and foreign commerce, the funds were frozen by internal compliance officials at Deutsche Bank and placed into one or more blocked accounts in the United States, from which the defendant funds were seized.

Funds Seized From HSBC

37. HSBC is headquartered in New York, New York, and McLean, Virginia.

38. HSBC did not possess a license from OFAC to conduct transactions with or for the benefit of Tajideen, Husayn Tajideen, or TAJCO during the period beginning April 1, 2012 until May 1, 2014.

39. During the period of April 1, 2012 until May 1, 2014, a portion of the defendant funds totaling approximately $116,909.66 was wire transferred into U.S.-dollar accounts located in the United States at HSBC, for the benefit of Tajideen, Husayn Tajideen, and TAJCO, all in violation of IEEPA, Executive Order 13224, the GTSR, and the Money Laundering Control Act. These funds include:

a. on or about April 12, 2012, a wire transfer in the amount of $80,000.00 from an account held in the name of Ancienne Maison Marcel at Credit Industriel et Commercial, in Paris, France, intended for an account held by SA Ancienne Maison Marcel Bauche at BNP Paribas (Suisse) SA, in Geneva, Switzerland, and marked for the benefit of Grand Stores, a company owned in whole or in part by, and operated for the benefit of, TAJCO, Tajideen and Husayn Tajideen.

b. on or about March 17, 2014, a wire transfer in the amount of $11,942.49 from an account in the name of Shanser, a company owned in whole or in part by, and operated for the benefit of, Tajideen and Husayn Tajideen, held at Trust Bank, Ltd., in Banjul, Gambia, intended for an account in the name of Guo Huaibiao at Bank of China in Beijing, China.

c. on or about April 25, 2014, a wire transfer in the amount of $24,666.63 from an account held by Shanser, a company owned in whole or in part by, and operated for the benefit of, Tajideen and Husayn Tajideen at Trust Bank Ltd., intended for an account in the name of Asia Intertrade Rice Export Co., Ltd., at Kasikornbank Public Company Limited, in Bangkok, Thailand.

40. During each of these three transactions, all of which affected interstate and foreign commerce, the funds were frozen by internal compliance officials at HSBC and placed into blocked accounts in the United States, from which the defendant funds were seized.

## FIRST CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from Proceeds
Traceable to a Specified Unlawful Activity – IEEPA Violations)

41. Paragraphs 1 through 40 of this Verified Complaint for Forfeiture *In Rem* are incorporated herein by reference.

42. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting specified unlawful activity" is subject to forfeiture by the United States.

43. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, offenses related to violations of the International Emergency Economic Powers Act.

44. For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C. § 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from this offense."

45. The defendants *in rem* are funds that constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of IEEPA. As a result, the *in rem* defendants are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from Proceeds Traceable to a Specified Unlawful Activity – Conspiracy to Violate IEEPA)

46. Paragraphs 1 through 45 of this Verified Complaint for Forfeiture *In Rem* are incorporated herein by reference.

47. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting specified unlawful activity…or a conspiracy to commit such an offense" is subject to forfeiture by the United States.

48. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, offenses related to violations of the International Emergency Economic Powers Act.

49. For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C. § 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from this offense."

50. The defendants *in rem* are funds that constitute or are derived from proceeds traceable to a conspiracy to violate IEEPA. As a result, the *in rem* defendants are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(A) – Property Involved in and/or Traceable to
International Money Laundering)

51. Paragraphs 1 through 50 of this Verified Complaint for Forfeiture *In Rem* are incorporated by reference.

52. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture by the United States.

53. Pursuant to 18 U.S.C. § 1956(a)(2)(A), a person commits money laundering if the person transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds to a place inside the United States from or through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity.

54. As noted above, 18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" to include, among other things, offenses related to violations of IEEPA.

55. The defendants *in rem* are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute property involved in a violation of 18 U.S.C. § 1956(a)(2)(A) with the intent to promote the carrying on of a specified unlawful activity, namely a violation of IEEPA.

Case 1:16-cv-00064-RBW   Document 1   Filed 01/13/16   Page 14 of 15

## REQUEST FOR RELIEF

WHEREFORE, the United States of America requests that Arrest Warrants *In Rem* and notice issue on the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED this 13th day of January 2016.

Respectfully submitted,

~~M. KENDALL DAY~~
Chief
Asset Forfeiture and Money Laundering Section

By: _____
ANDREA DUVALL, AR Bar No. 2013114
JOSEPH PALAZZO, MA Bar No. 669666
Trial Attorneys
US Department of Justice, Criminal Division
1400 New York Avenue, NW - 10th Floor
Washington, DC 20005
(202) 514-1263
andrea.duvall@usdoj.gov
joseph.palazzo@usdoj.gov

## **VERIFICATION**

I, Anthony Maddalone, a Task Force Officer for the Drug Enforcement Administration, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint For Forfeiture *In Rem* and all exhibits and know the contents thereof, and that the matters contained in the Verified Complaint For Forfeiture *In Rem* are true to my own knowledge.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other sworn law enforcement officers, as well as my investigation of this case, along with others.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

EXECUTED on this 13th day of January 2016.

_____
Anthony Maddalone
Task Force Officer
Drug Enforcement Administration