UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 16-64 (RBW) |
| THREE SUMS TOTALING ) | |
| $1,207,035.31 IN SEIZED UNITED ) | |
| STATES CURRENCY, ) | |
| ) | |
| Defendants in rem. ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, the United States of America (the "government"), brings this civil forfeiture action "against United States currency traceable to violations of the International Emergency Economic Powers Act of 1977 [(the 'Act')], 50 U.S.C. §§ 1701–1706, and involved in violations of the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)[(2)(A) and 1956(h)]," alleging that "[t]hese funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984." Verified Complaint for Forfeiture in Rem ("Compl." or the "Complaint") ¶ 1, ECF No. 1. Currently pending before the Court is the Plaintiff's Motion for Entry of [a] Default Judgment and Order of Forfeiture (the "government's motion" or "Gov't's Mot."), ECF No. 21. Upon careful consideration of the government's submissions,[1] the Court concludes for the following reasons that it must grant the government's motion and order the forfeiture of the defendant funds to the government.

---

[1] In addition to the filings already identified, the Court considered the following submission in rendering its decision: Memorandum of Law in Support of Plaintiff's Motion for Entry of [a] Default Judgment and Order of Forfeiture ("Gov't's Mem."), ECF No. 21-2.

# I. BACKGROUND

The following funds constitute the defendants <u>in rem</u>:

    a.    $629,311.19, plus interest, formerly on deposit in account number 122559 at Deutsche Bank, seized on or about November 27, 2015 [ ];

    b.    $116,939.12, plus interest, formerly on deposit in account numbers 048-468-401, 048-549-525, and 610-551-094 located at HSBC Bank USA, N.A., seized on or about November 25, 2015 [ ]; and,

    c.    $460,785.00 in United States currency, plus interest, formerly on deposit within account number 8539237860 located at Wells Fargo, N.A. ("Wells Fargo"), seized on or about June 17, 2015 [ ].

<u>Id.</u> ¶ 4.

On May 27, 2009, the United States Department of the Treasury's Office of Foreign Assets Control (the "OFAC") "designated Kassim Tajideen [('Tajideen')] as a[ Specially Designated Global Terrorist ('SDGT')] pursuant to [the Act] and Executive Order 13224[²] based on his significant financial support of the Hizbollah terrorist organization."³ <u>Id.</u> ¶ 13. On December 9, 2010, the OFAC "designated, among others, . . . four companies as SDGTs . . . pursuant to [the Act] and Executive Order 13224 . . . after being identified as being owned or controlled by . . . Tajideen [or his brother]." <u>Id.</u> ¶ 14. "At all times since their designation date until [the date of the filing of the Complaint], all of these entities have remained SDGTs." <u>Id.</u>

## A. The Criminal Case Against Kassim Tajideen

The criminal activity of Tajideen, his designation as an SDGT, and the forfeitures of Tajideen's assets are not new to this Court. On March 7, 2017, a grand jury issued an Indictment

---

² Executive Order No. 13,224, 66 Fed.Reg. 49,079, "describe[s] the types of conduct that could subject an entity to blocking of its assets, such as providing financial support to terrorists . . . and authorized the designat[ion of] additional entities . . . determine[d to be] within the purview of the Order." <u>Islamic Am. Relief Agency v. Gonzales</u>, 477 F.3d 728, 734–35 (D.C. Cir. 2007).

³ On December 9, 2010, the OFAC "designated [ ] Tajideen's brother, Husayn Tajideen[,] as an SDGT for the same reasons[, and a]t all times since their respective designation dates until today, both individuals have remained SDGTs." Compl. ¶ 13.

charging Tajideen and a codefendant with one count of conspiracy to violate the Act and the Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594, as well as multiple counts of unlawful transactions with an SGDT and one count of conspiracy to commit money laundering. See generally Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 7, 2017) (the "Indictment"), ECF No. 1. "[O]n March 25, 2017, agents of [United States] Drug Enforcement Agency transported [Tajideen] to the United States," in order to execute Tajideen's extradition. Defendant Kassim Tajideen's Motion to Dismiss No. 7 As to Superseding Indictment at 5, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 16, 2018), ECF No. 116. On February 15, 2018, the grand jury issued a Superseding Indictment which instead charged Tajideen with one count of conspiracy to conduct unlawful transactions and cause United States persons to conduct unlawful transactions with an SGDT and to defraud the United States by dishonest means, as well as involvement in the unlawful transactions and money laundering counts. See generally Superseding Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Feb. 15, 2018) (the "Superseding Indictment"), ECF No. 89. Both the original Indictment and the Superseding Indictment included forfeiture counts. See Indictment at 26; Superseding Indictment at 25. As this Court previously explained:

> In short, the defendant is charged with allegedly "continu[ing] to conduct business with [United States] entities through a large network of businesses with ever-changing names run by a relatively small group of personnel, effectively hiding his own involvement in the transactions," despite his designation as an SDGT by the [OFAC].

United States v. Tajideen, No. CR 17-46, 2018 WL 1342475, at *1 (D.D.C. Mar. 15, 2018) (first and second alterations in original, aff'd, 724 F. App'x 6 (D.C. Cir. 2018).

Tajideen pleaded guilty to conspiracy to commit money laundering and was sentenced to sixty months of imprisonment, with all other counts being "dismissed on the motion of the

3

United States."[4]  Judgment at 1–2, <u>United States v. Tajideen</u>, Crim. Action No. 17-46 (D.D.C. Aug. 12, 2019) (the "Judgment"), ECF No. 251.  Tajideen was also required to forfeit his interest in "a money judgment of $50,000,000.00" to the United States.  <u>Id.</u> at 6.  According to the Statement of Facts tendered as part of Tajideen's guilty plea, Tajideen

> acknowledge[d] that . . . his [SDGT] designation by [the] OFAC, and the prohibitions on transactions attendant to it under the [Act] and other regulations, were in full force during the period of the conspiracy period . . . , and, that other laws made it unlawful for any person to violate, attempt to violate, conspire to violate, or cause a violation of these prohibitions.

Statement of Facts at 2, <u>United States v. Tajideen</u>, Crim. Action No. 17-46 (RBW) (D.D.C. Dec. 6, 2018) (the "Statement of Facts"), ECF No. 214.  Furthermore, the Statement of Facts that Tajideen acknowledged was accurate when he entered his guilty plea, indicates that he and his co-conspirators engaged in a plethora of transactions, <u>see id.</u> at 3–4, including wire transfers—at least similar to those alleged in this forfeiture action—of "as much as $1 billion through the United States financial system from places outside the United States,"  <u>Id.</u> at 4.

### B. The Government's Forfeiture Allegations

The defendant funds involved in this case were seized "[p]ursuant to seizure warrants issued by this Court . . . and [the funds were then] transferred to the possession and custody of the United States Marshals Service, where they currently remain[.]"  Compl. ¶ 5.  The government alleges that "[a]n American company [('Company A')] . . . is a privately-held food exporter that primarily sells frozen meat products to distributors in China, Africa, and the Middle East[, and] Company A maintained bank accounts at BB&T and at Wells Fargo."  Id. ¶ 30.

> During the approximate period of December 1, 2013 through June 1, 2015, Company A conducted a series of at least six sales transactions with [the International Corss Trade Company Limited ("ICTC")], Sicam Ltd, and Tajideen,

---

[4] On June 4, 2020, the Court amended its Judgment to modify Tajideen's prison sentence to the time he had already served.  Amended Judgment, <u>United States v. Tajideen</u>, Crim. Action No. 17-46 (D.D.C. Jun. 4, 2020), ECF No. 266.

>all affecting interstate and foreign commerce. As part of the transactions, Company A shipped over three million kilograms of goods from the United States to Angola consigned to Sicam Ltd, a company owned and controlled by Tajideen. As payments for the goods, a portion of the defendant funds, totaling approximately $460,800.00, was wire transferred from banks in the United Arab Emirates on behalf of ICTC, a company owned and controlled by Tajideen, into accounts located in the United States at BB&T [bank], all in violation of [the Act], Executive Order 13224, the [Global Terrorism Sanctions Regulations], and the Money Laundering Control Act. Company A subsequently transferred these funds into an account held at Wells Fargo [bank], from which the defendant funds were seized.

Id. ¶ 32. Other sums of wire-transferred funds were also seized from Deutsche Bank as funds that were for the benefit of the identified SDGTs, see id. ¶¶ 33–36, and HSBC, see id. ¶¶ 37–40.

On January 13, 2016, the government filed this civil forfeiture action against the defendant funds. See Compl. at 1. In the Complaint, the government makes three claims in support of the forfeiture of the funds based on their traceability to (1) specified violations of the Act, see id. ¶¶ 41–45; (2) a conspiracy to violate the Act, see id. ¶¶ 46–50, and (3) international money laundering, see id. ¶¶ 51–55. On January 14, 2016, the Clerk of the Court issued a warrant for the arrest in rem of the defendant funds. See Warrant for Arrest In Rem at 1 (Jan. 14, 2016) ("Warrant"), ECF No. 3. Then, beginning on January 28, 2016, the government published notice of this action on its public forfeiture website, www.forfeiture.gov, for at least thirty consecutive days. See Declaration of Publication ("Publication Decl.") at 1, ECF No. 18. Additionally, "[o]n or about March 24, 2016, the government served notice [of this action] on the known potential claimants," Plaintiff's Request for Clerk's Entry of Default and Affidavit in Support of Default ("Default Aff."), ECF No. 20. On April 24, 2020, the government moved for "ent[ry of a d]efault against the defendant properties and all parties that might have an interest in it[,]" Default Aff. ¶ 8, which the Clerk of the Court granted on April 27, 2020, see Default at 1 (Apr. 27, 2020), ECF No. 23. The government's motion for a default judgment, which was filed on April 24, 2020, Gov't's Mot. at 1, is the subject of this Memorandum Opinion.

## II.     STANDARD OF REVIEW

Pleadings in forfeiture actions proceed pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), see Supplemental Rule ("Suppl. R.") A(1)(B), as well as the Federal Rules of Civil Procedure, to the extent they are not "inconsistent with [the] Supplemental Rules," see Supp. R. A(2).

Federal Rule of Civil Procedure 55 sets forth a two-step process for a party seeking a default judgment. See Fed. R. Civ. P. 55. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits[.]" Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); see Peak v. District of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (acknowledging the inherent unfairness of awarding a judgment against a party for mere filing delays). Therefore, a "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Jackson, 636 F.2d at 836 (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)); see Teamsters Local 639–Emps Health Tr. v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (Walton, J.) ("[W]hen the adversary process has been halted because of an essentially unresponsive party[,] the diligent party must be protected lest [they] be faced with interminable delay and continued uncertainty as to [their] rights." (second alteration in original) (quoting Peak, 236 F.R.D. at 15)).

"The determination of whether [a] default judgment is appropriate is committed to the discretion of the trial court." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). A "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011); see Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."). However, "the Court must 'make an independent determination of the sum to be awarded' pursuant to the judgment 'unless the amount of damages is certain.'" Boland v. Yoccabel Constr. Co., 293 F.R.D. 13, 17 (D.D.C. 2013) (Walton, J.) (quoting Adkins, 180 F. Supp. 2d at 17). "'[P]laintiff[s] must prove [their] entitlement to the amount of monetary damages requested' using 'detailed affidavits or documentary evidence' on which the [C]ourt may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III.  ANALYSIS

The government argues that it is entitled to a default judgment against the defendant funds based "upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, and the default having been sought[5] with the Clerk of the Court[.]" Gov't's Mem. at 13. For the following reasons, the Court agrees that the government is entitled to a default judgment against the defendant funds and that the total amount of the defendant funds are properly subject to forfeiture to the government.

---

[5] As mentioned above, the Clerk of the Court entered default on April 27, 2020. See Default at 1 (Apr. 27, 2020), ECF No. 23.

**A. Procedural Prerequisites to Forfeiture <u>in Rem</u>**

Supplemental Rule G "governs [ ] forfeiture action[s] <u>in rem</u> arising from a federal statute." Supp. R. G(1). Relevant here, Supplemental Rule G requires the government to (1) file a verified complaint, Supp. R. G(2)(a) that, <u>inter alia</u>, "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial[,]" Supp. R. G(2)(f); (2) "publish[] notice of the action within a reasonable time after filing the complaint[,]" Supp. R. G(4)(a)(i), which may be done by "posting a notice on an official internet government forfeiture site for at least [thirty] consecutive days[,]" Supp. R. G(4)(iv)(C); and (3) "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government[,]" Supp. R. G(4)(b)(i), "by means reasonably calculated to reach the potential claimant[,]" Supp. R. G(4)(b)(i), (iii)(A). Rule G also provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control[.]" Supp. R. G(3)(b)(i).

Here, the Court concludes that the government has demonstrated that the applicable requirements of Supplemental Rule G have been satisfied. First, on January 13, 2016, the government filed a verified complaint satisfying the requirements of Rule G(2), <u>see</u> Compl.; Supp. R. G(2),[6] and, the Clerk of the Court issued a warrant to arrest the property in accordance with Supplemental Rule G(3), <u>see</u> Warrant; Supp. R. G(3)(b)(i). Then, on January 28, 2016, within a reasonable time after filing its complaint, the government published notice of this action

---

[6] Supplemental Rule G(2) provides that "[t]he complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, <u>in rem</u> jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action [wa]s filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G(2). Based on its review of the government's Complaint, the Court finds that the Complaint satisfies each of these requirements.

on www.forfeiture.gov, an official government forfeiture website, for thirty consecutive days in accordance with Supplemental Rule G(4)(a).  See Default Aff. ¶ 6; Supp. R. G(4)(a)(i), (iv)(C).[7] At approximately the same time, the government sent notice of this action and a copy of its Complaint to the seventeen potential claimants it identified in accordance with Supplemental Rule G(4)(b).  See Default Aff. ¶ 5.

Moreover, the Court concludes that the notices sent by the government to the potential claimants were "sent by means reasonably calculated to reach the potential claimant[s]" as required by Supplemental Rule G(4)(b).[8]  Supp. R. G(4)(b)(iii)(A).  The government's direct notices were adequately sent to known potential claimants both inside and outside the United States via common carrier.  See Default Aff. ¶ 5, 6; Gov't's Mem. at 9–11.  The government's efforts were demonstrably effective for at least one potential claimant, as they empowered Tajideen to file a claim in this case, see Kassim Tajideen's Verified Claim and Statement of Interest in Defendant Property, which the Court resolved on April 27, 2020, see Order of Judgment as to Claimant Kassim Tajideen.  Even if these direct notices were not demonstrably targeted to potential claimants, the government's concurrent effort to notify the public at large by posting notice of this action on its official forfeiture website is also sufficient to satisfy

---

[7] Supplemental Rule G(4)(a) provides that the "notice must: (A) describe the property with reasonable particularity; (B) state the times under [Supplemental] Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer."  Supp. R. G(4)(a)(ii).  The government's notice satisfied each of these requirements.  See Declaration of Publication ("Publication Decl."), Att. 1 (Notice of Forfeiture Action) at 1.

[8] The Court concludes that the government's notices also satisfied the remaining requirements of Rule G(4)(b). First, the notices satisfy Rule G(4)(b)(i)'s requirement that such notices be sent within sixty days after the government posted notice of this action on an official government forfeiture website.  See Publication Decl., Att. 1 (Notice of Forfeiture Action); see also Supp. R. G(4)(b)(i) (requiring that the notices be sent "before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)"); Supp. R. G(5)(a)(ii)(B) (requiring that claims be filed "no later than [sixty] days after the first day of publication on an official internet government forfeiture site").  Additionally, the notices satisfy Rule G(4)(b)(ii), which provides that "[t]he notice[s] must state: (A) the date when the notice is sent; (B) a deadline for filing a claim, at least [thirty-five] days after the notice is sent; (C) that an answer or motion under Rule 12 must be filed no later than [twenty-one] days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer."  Supp. R. G(4)(b)(ii); see Publication Decl., Att. 1 (Notice of Forfeiture Action).

9

Supplemental Rule G(4)(b).  See United States v. Funds up to & Including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Pan., Account # 201000274785, Titled in the Name of Inversiones Cedeno C.A., and/or Prop. Traceable Thereto, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (concluding that multiple unsuccessful attempts to obtain contact information for potential claimant were sufficient to satisfy Supplemental Rule G(4)(b), given, inter alia, that the government posted notice on its public forfeiture website); see also Hammel v. U.S. Dep't of Justice, Civ. Action No. 12-2932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (citing "case law . . . concluding that multiple address searches, combined with mailings to the found addresses and publication in a newspaper of general publication is normally notice that is 'reasonably calculated' to reach an interested party" (alteration in original) (citation and internal quotation marks omitted)).

No person or entity—other than Tajideen—has filed a claim to or sought to defend the defendant funds in this case.  Moreover, the time for filing a claim has now expired.  See Supp. R. G(5)(a)(ii)(A)–(B) (providing that a "claim must be filed: (A) by the time stated in a direct notice sent under [Supplemental] Rule G(4)(b); [or] (B) if notice was published but direct notice was not sent, . . . no later than [sixty] days after the first day of publication on an official internet government forfeiture site").  For all of these reasons, the Court concludes that the government has satisfied the applicable procedural prerequisites for the forfeiture of the defendant funds under Supplemental Rule G and that the Clerk of the Court's entry of a default against the defendant funds was appropriate.

**B. Forfeiture Under 18 U.S.C. §§ 981(a)(1)(A) and (C)**

As the Court explained previously, "[a] defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  Adkins, 180 F. Supp. 2d at 17.  Having concluded

10

that the Clerk of the Court's entry of a default against the defendant funds was proper, the Court therefore deems the allegations in the government's Complaint admitted. Based on the allegations in the government's Complaint, the Court concludes that they establish the facts necessary to warrant forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

The Court's analysis begins with § 981(a)(1)(C), which provides that "property that 'constitutes or is derived from proceeds traceable to' violations of . . . [section 206 of] the [Act] is subject to forfeiture."  In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 87 (2d Cir. 2016) (first quoting 18 U.S.C. § 981(a)(1)(C); then citing id. § 1956(c)(7)(D); then citing 50 U.S.C. § 1705 (2012)). Section 206 of the Act makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under" the Act. 50 U.S.C. § 1705(a). Relevant here, the Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594, make it "illegal [under the Act] for any [United States] person or entity to engage in any transaction not only with a designated SDGT, but also with any undesignated third-party entity or person acting on behalf of the designated SDGT[,]" without first obtaining a license from the OFAC. Compl. ¶ 20; see 31 C.F.R. pt. 594.701.

The government alleges that the defendant funds "constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of [the Act]," Compl. ¶ 45, and "a conspiracy to violate [the Act,]" id. ¶ 50. Specifically, the government alleges that the defendant funds were involved in wire transfers involving entities without the proper license from the OFAC to conduct business for the benefit of the identified SDGTs. See id. ¶¶ 31, 34, 38. These allegations and the various other factual allegations supporting them are sufficient to establish that the defendant funds constitute or are derived from proceeds traceable to a violations the Act, and thus, are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

Additionally, the government's allegations establish that the defendant funds are subject to forfeiture under § 981(a)(1)(A), as they were derived from proceeds traceable to violations of 18 U.S.C. § 1956. Section 1956 makes it unlawful to "transport[], transmit[], or transfer[] . . . a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity[,]"18 U.S.C. § 1956(a)(2)(A), or to conspire to do so, see id. § 1956(h). As previously discussed, the government alleges that the defendant funds constitute or were derived from proceeds traceable to violations of the Act, see, Compl. ¶ 45, which are "specified unlawful activit[ies]" under § 1956, see 18 U.S.C. § 1956(c)(7)(D) (defining "specified unlawful activity" to include offenses under "section 206 . . . of the [the Act]"). Thus, the government's well-pleaded allegations are sufficient to establish that the defendant funds were derived from proceeds traceable to a violation of § 1956(a)(2)(A), and consequently, § 981(a)(1)(A) provides an additional ground for forfeiture of the defendant funds.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the government has demonstrated that the procedural prerequisites for civil forfeiture of the defendant funds have been satisfied, that the defendant funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and that the government is entitled to the seized funds it seeks to have forfeited. Therefore, the Court must grant the government's motion for default judgment.

**SO ORDERED** this 3rd day of June, 2021.[9]

REGGIE B. WALTON<br>United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.